# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:12-cv-00101-MR-DLH

| | |
|---|---|
| **BURDETTE HUGHES,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OF** |
| vs. ) | **DECISION AND ORDER** |
| ) | |
| **CAROLYN W. COLVIN,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Judgment on the Pleadings [Doc. 10] and the Defendant's Motion for Summary Judgment [Doc. 14].

## I.     PROCEDURAL HISTORY

The Plaintiff Burdette Hughes filed an application for a period of disability insurance benefits and supplemental security income on November 27, 2009, alleging that he had become disabled as of December 18, 2006. [Transcript ("T.") 42, 187]. The Plaintiff's application was denied initially on March 17, 2010, [T. 100], and was denied again upon reconsideration on June 10, 2010. [T. 106]. Upon the Plaintiff's request for

a rehearing, a hearing was held before an Administrative Law Judge ("ALJ") on February 24, 2011 via video conference. [T. 9]. On May 11, 2011, the ALJ issued an unfavorable decision. [T. 6-17]. On March 16, 2012, the Appeals Council denied the Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. [T. 1]. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

The Social Security Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). The Fourth Circuit has defined "substantial evidence" as "more than a scintilla and [doing] more than creat[ing] a suspicion of the existence of a fact to be established.

It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

The Court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner, even if it disagrees with the Commissioner's decision, so long as there is substantial evidence in the record to support the final decision below. Hays, 907 F.2d at 1456; Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. THE SEQUENTIAL EVALUATION PROCESS

In determining whether or not a claimant is disabled, the ALJ follows a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920. If the claimant's case fails at any step, the ALJ does not go any further and benefits are denied. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

First, if the claimant is engaged in substantial gainful activity, the application is denied regardless of the medical condition, age, education, or work experience of the applicant. 20 C.F.R. §§ 404.1520, 416.920. Second, the claimant must show a severe impairment. If the claimant does not show any impairment or combination thereof which significantly limits the claimant's physical or mental ability to perform work activities, then no severe impairment is shown and the claimant is not disabled. Id. Third, if

the impairment meets or equals one of the listed impairments of Appendix 1, Subpart P, Regulation 4, the claimant is disabled regardless of age, education, or work experience. Id. Fourth, if the impairment does not meet the criteria above but is still a severe impairment, then the ALJ reviews the claimant's residual functional capacity (RFC) and the physical and mental demands of work done in the past. If the claimant can still perform that work, then a finding of not disabled is mandated. Id. Fifth, if the claimant has a severe impairment but cannot perform past relevant work, then the ALJ will consider whether the applicant's residual functional capacity, age, education, and past work experience enable the performance of other work. If so, then the claimant is not disabled. Id.

## IV. THE ALJ'S DECISION

On May 11, 2011, the ALJ issued a decision denying the Plaintiff's claims. [T. 6-17]. Proceeding to the sequential evaluation, the ALJ found that the Plaintiff's date last insured was December 31, 2011 and that he had not engaged in substantial gainful activity since December 18, 2006. [T. 11]. The ALJ then found that the medical evidence established the following severe impairments: diabetes, degenerative joint disease of the knee, obesity, and borderline intellectual functioning. [T. 11]. The ALJ

determined that none of Plaintiff's impairments met or equaled a listing. [Id.].

The ALJ then assessed the Plaintiff's residual functional capacity (RFC), finding that the Plaintiff had the ability to perform light work as defined in 20 C.F.R. § 404.1567(b) and 20 C.F.R. § 416.967(b) except he would be able to occasionally climb, stoop, kneel, crouch or crawl, would be limited to occupations which do not require complex written or verbal communication or anything more than simple arithmetic, would be able to understand, remember and carry out simple instructions and make judgments on simple work related decisions, would be able to interact appropriately with supervisors and coworkers in a routine work setting, and would be able to respond to usual work situations and to changes in a routine work setting. [T. 12]. The ALJ found that the Plaintiff was unable to perform any past relevant work. [T. 15]. The ALJ noted that the transferability of job skills was not material to the determination of the Plaintiff's disability since the Medical-Vocational Rules framework supported a finding of "not disabled." [T. 16]. Finally, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that the Plaintiff could perform. [Id.].

5

## V. DISCUSSION[1]

The Plaintiff asserts the following assignments of error: (1) that the ALJ erred by failing to properly apply Social Security's Medical Vocational Guidelines ("Grids"); (2) that the ALJ erred in his evaluation of the medical opinions in this case in violation of 20 C.F.R. § 404.1527; and (3) that the ALJ's credibility assessment is not supported by substantial evidence. The Court will address each of these assignments of error in turn.

### A. The ALJ's Application of Medical-Vocational Guidelines

The Plaintiff argues that the ALJ misclassified his past relevant work in this case by referencing a job outside the relevant time period and by not applying 20 C.F.R. Pt. 404, Subpt. P, App. II § 202.09 to find that he met the disability qualifications. [Doc. 11 at 8-9]. Past relevant work is defined as those jobs performed in the fifteen years prior to the adjudication of the claim or before the date when the claimant was last insured, whichever comes first. SSR 82-62. 20 C.F.R. Pt. 404, Subpt. P, App. II § 202.09 directs a finding of disabled to persons aged 50 to 54, who are illiterate or unable to communicate in English, have either no work background at all or only a history of unskilled work, and are limited to light work due to severe

---

[1] Rather than set forth a separate summary of the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

medically determinable impairment(s).[2]  Further, 20 C.F.R. Pt. 404, Subpt. P, App. II § 202.10 directs a finding of not disabled to persons aged 50 to 54, who are at least literate and able to communicate in English, have no work background at all or only a history of unskilled work, and are limited to light work due to severe medically determinable impairment(s). Additionally, 20 C.F.R. Pt. 404, Subpt. P, App. II § 202.11 directs a finding of not disabled to persons aged 50 to 54, who are at least literate and able to communicate in English, have a history of skilled or semiskilled work with non-transferable skills, and are limited to light work due to severe medically determinable impairment(s).

The ALJ should not have considered the stock clerk position as past relevant work for the Plaintiff in this case since the Plaintiff did not work in such a capacity within fifteen years prior to the adjudication of his claim.[3] This error by the ALJ is harmless, however, since consideration of the Plaintiff's past relevant work of assisting individuals in their homes independently yields a finding of not disabled according to the Grids.

---

[2] The Plaintiff was 46 years old as of his alleged onset date of December 18, 2006, and the ALJ's decision notes that he was defined as a younger individual (18-49). The Plaintiff turned 50 years old on June 17, 2010 and thus fits into the category of closely approaching advanced age (50-54 years old).

[3] Since this claim was heard on February 24, 2011, only work performed after February 24, 1996 is relevant to this case.

The Plaintiff argues that his past relevant work should not have been considered as semi-skilled since the definition of a home health aide, according to the Dictionary of Occupational Titles, includes numerous tasks which exceeded the scope of the Plaintiff's past relevant work. [Doc. 11 at 8]. Even if the ALJ's consideration of the Plaintiff's work as a home health aide was in error, it was harmless since the Plaintiff is not illiterate and thus 20 C.F.R. Pt. 404, Subpt. P, App. II § 202.09 does not apply to his case. The Plaintiff testified at his hearing that his reading and writing were "not good," [T. 29], and noted in a report that he "ha[d] trouble reading and comprehending" [T. 224]. Further, the Plaintiff reported that he "[c]annot read and write real well" and "is probably on a 5th or 6th grade level." [T. 278]. On January 28, 2010, Dr. Welser noted that the Plaintiff "is not able to read and write adequately," [T. 429], and Dr. Guttier noted that the Plaintiff had "poor magazine reading skills" on April 7, 2011 [T. 457]. Thus, while the Plaintiff has difficulty with reading and writing, the medical evidence of record does not indicate that he is actually illiterate. Therefore, even if the Plaintiff had only unskilled work or even no prior work experience within the relevant time period, he could be found not disabled according to § 202.10 because he possessed basic literacy skills.

In sum, there is substantial evidence from the record to support the application of the Medical-Vocational Guidelines to the Plaintiff's case with a finding of not disabled. Thus, the Plaintiff's first assignment of error has no merit.

## B. The ALJ's Evaluation of Medical Opinions

The Plaintiff next argues that the ALJ failed to properly weigh the opinion of Dr. Guttier in accordance with 20 C.F.R. § 404.1527. [Doc. 11 at 10]. An ALJ must give controlling weight to the opinion of a claimant's treating physician when the opinion concerns the nature and severity of an impairment, is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the case record. 20 C.F.R. § 404.1527(c)(2). Thus, an opinion of a treating physician is not entitled to controlling weight if it is unsupported by medically acceptable clinical and laboratory diagnostic techniques and/or inconsistent with other substantial evidence of record. Id.; see also Rogers v. Barnhart, 204 F.Supp.2d 885, 893 (W.D.N.C. 2002) ("Even the opinion of a treating physician may be disregarded where it is inconsistent with clearly established, contemporaneous medical records."). In evaluating the weight of a medical source, factors are considered such as the length of the treatment relationship, the frequency of examination,

the nature and extent of the treatment relationship, the supportability of the medical source, the consistency of the medical source, and the specialization of the provider. 20 C.F.R. § 404.1527(c)(1-6).

Additionally, the opinions of non-examining state agency medical sources must be considered by the ALJ, insofar as they are supported by evidence in the case record, as those of highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act. 20 C.F.R. §§ 404.1527(e); SSR 96-6p, 1996 WL 374180, at *2. The ALJ must explain the weight given to State agency findings in his or her decision. SSR 96-6p, at *1. Further, the ALJ must explain why the State agency opinion was not adopted in his determination of the claimant's RFC if his findings conflict with the State agency opinion. SSR 96-8p, 1996 WL 374184, at *7.

In the present case, the ALJ discussed the findings of two physical consultative evaluations of the Plaintiff performed by Dr. Goodson and Dr. Guttier, and two psychological consultative evaluations of the Plaintiff performed by Dr. Welser and Dr. Carraway. [T. 13-15]. The ALJ recited Dr. Guttier's findings regarding the Plaintiff's limitations and restrictions but noted that his opinion was given "some weight," stating:

> Generally, Dr. Guttier's opinion is less restrictive than the claimant's allegations of physical limitation. He does provide generously for environmental limitations, which are not directly supported in the medical record. I did, however agree, with Dr. Guttier by providing for a limitation to work not requiring complex written or verbal communication.

[T. 15]. While the ALJ failed to adequately explain why he did not fully adopt Dr. Guttier's findings of physical limitations, his failure to do so was harmless in light of the other substantial evidence in the record which supports the ALJ's RFC determination. The ALJ gave Dr. Welser's findings "great weight because he found them to be consistent with the medical evidence as a whole and the claimant's and third party reports about his daily living activities," in addition to the Plaintiff's hearing testimony. [Id.]. The ALJ also afforded great weight to Dr. Carraway's opinion because he found it "consistent with the claimant's testimony of mild limitations of daily living activities." [Id.]. Notably, the Plaintiff's medical evidence from treating providers following his alleged onset date up to the time of his hearing fail to establish such physical restrictions and limitations as noted by Dr. Guttier. T. 354-363, 417-422.

In sum, the Court concludes that the record contains substantial evidence to support the ALJ's findings regarding the Plaintiff's restrictions of daily activities and the Plaintiff's RFC. Although the ALJ failed to

adequately explain his discounting of Dr. Guttier's findings, his discussion of other substantial evidence supports his RFC determination. The Plaintiff's second assignment of error, therefore, is without merit.

### C. The ALJ's Credibility Assessment

The Plaintiff next argues that the ALJ failed properly to assess his credibility with respect to his subjective allegations. [Doc. 11 at 11-12].

In the Fourth Circuit, a two-step process is used to analyze subjective allegations. Hines v. Barnhart, 453 F.3d 559, 564 (4th Cir. 2006); Craig, 76 F.3d at 594-95; 20 C.F.R. § 404.1529(b) and (c). First, the ALJ must determine whether a medical impairment is present which can reasonably be expected to cause the symptoms alleged. Craig, 76 F.3d at 594-95; 20 C.F.R. § 404.1529(b). If this question is answered affirmatively, the ALJ then must evaluate the intensity and persistence of the symptoms. Craig, 76 F.3d at 594-95; 20 C.F.R. § 404.1529(c). Factors relevant to this determination include the claimant's daily activities; the claimant's statements regarding the location, duration, and frequency of the symptoms; precipitating and aggravating factors; and the effectiveness of medicine and other treatment. Craig, 76 F.3d at 594-95; 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii). Moreover, although a claimant's allegations cannot be disregarded at step two because of a lack of objective evidence, an ALJ

may still take the objective medical evidence into consideration and is free to reject the allegations to the extent they are inconsistent with the available evidence, including the objective medical evidence. Hines, 453 F.3d at 565 n.3; 20 C.F.R. § 404.1529(c)(2).

Ultimately, the ALJ is responsible for making credibility determinations and resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). An ALJ is accorded deference as to determinations of a claimant's credibility. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). "Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Id.

An ALJ can properly find that the claimant lacked credibility when his alleged level of pain is not commensurate with the treatment he sought out or received. See Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994) ("an unexplained inconsistency between the claimant's characterization of the severity of [his] condition and the treatment [he] sought to alleviate that condition is highly probative of the claimant's credibility"); SSR 96-7p, 1996 WL 374186, at *7 (July 2, 1996) ("[An] individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is

not following the treatment as prescribed and there are no good reasons for this failure."). An ALJ, however, "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7p, 1996 WL 374186, at *7. An ALJ must give "specific reasons for the finding on credibility, supported by the evidence in the case record." Id. at *2.

Here, the ALJ found the Plaintiff's statements regarding his subjective symptoms not credible for various reasons. [T. 13]. He noted that "[t]reatment notes show the claimant was non-compliant with his treatment regime during [2003-2005]," that "he admitted to dietary indiscretions and was out of the medication for some time before he refilled them," and that "when he followed his treatment regimen his blood sugar levels showed marked improvement." [Id.; T. 387, 385, 375, 370]. He noted that the Plaintiff's "treatment plan included adherence to a diabetic diet, exercise, and [medications]." [Id.]. Additionally, the ALJ noted that Dr. Donepudi indicated that the Plaintiff's "diabetes control fluctuated in 2006 as well." [Id., T. 317-323]. Dr. Donepudi noted on June 1, 2006 that "[i]t has been

quite difficult to get him to bring his blood sugars in to his appointments . . .[and] [i]f he does not bring [them] to follow up then there is little that I will be able to offer him"; he also noted that "his diet is questionable." [T. 318-319]. On October 10, 2006, Dr. Donepudi noted that the "key is diet which I suspect is poor along [with] exercise." [T. 317]. Finally, the ALJ did note that "[m]ore recently, the claimant reported that he has been unable to take his medication regularly because of poor finances (Exhibit 2F)." [T. 13]. An ALJ cannot penalize a claimant for being unable to afford treatment. Lovejoy v. Heckler, 790 F.2d 1114, 1117 (4th Cir. 1986) (citation omitted). In this case, the ALJ did not penalize the Plaintiff for his inability to afford treatment, but rather listed numerous reasons for his finding that the Plaintiff's subjective complaints were not credible. [T. 13].

In sum, the ALJ considered the appropriate factors in assessing the credibility of the Plaintiff's subjective complaints. Substantial evidence in the record, therefore, supports the ALJ's credibility determination. The Plaintiff's final assignment of error is without merit.

## VI. CONCLUSION

For the foregoing reasons, the Court concludes that the ALJ applied the correct legal standards, and that there is substantial evidence to

support the ALJ's finding of no disability from the date of onset through the date late insured.

**O R D E R**

Accordingly, **IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 10] is **DENIED**; the Defendant's Motion for Summary Judgment [Doc. 14] is **GRANTED**; and the Commissioner's decision is hereby **AFFIRMED**. This case is hereby **DISMISSED WITH PREJUDICE**.

A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: April 7, 2014

Martin Reidinger
United States District Judge